SHEPHERD, J.
Juliette Aldana-Chiles (Chiles) appeals the Unemployment Appeals Commission’s (UAC) May 19, 2005 order, finding she is disqualified from receipt of benefits. We reverse.
For sixteen years from 1989 through October 29, 2004, Chiles worked for Behavioral Science Research Corporation (BSRC), a small market research firm located in Miami-Dade County. During these years, her status, responsibilities, and hours varied widely depending on her personal needs and the needs and economic ability of her employer to retain and pay her. By the time she left, BSRC had grown and stabilized considerably from the time Chiles came aboard in 1989 due in no small part to their mutual efforts.
The record reflects Chiles began as an hourly employee of BSRC, working on an as-needed basis and being paid for the hours she worked. In 1995, she was brought on as a full-time employee. In February 1996, she was promoted to Director of Field Services, and in September 1996, she acquiesced to the addition of the *809 duties of office manager to her responsibilities. By 1998, working these dual positions became too much for her, and she negotiated with her employer and supervisor, Robert Ladner, to scale back her responsibilities. In March 2001, Chiles requested and was granted medical leave, again because of stress-related problems. This was preceded by an agreed plan whereby she worked part time to see if such an arrangement would be mutually beneficial. In October, 2001, Chiles ended her medical leave and returned to work full time.
At the end of August 2003, Chiles again requested to work part time, this time because of lack of work and, as had happened in the past, the inability of Ladner to timely pay her. In September, Chiles took a three-week vacation with Ladner’s consent. Upon Chiles’ return, business looked up, and Ladner suggested Chiles return to full-time employment. Chiles complied.
In August 2004, the BSRC office manager, who also was Chiles’ friend, passed away. Chiles again added the office manager’s responsibilities to her own, and not unexpectedly, soon had difficulty performing both jobs simultaneously. For these reasons, and also because the office manager died suddenly and at a very young age, Chiles again approached Ladner and expressed a desire to scale back much as she had done in the past. A few months later, in October 2004, Chiles took a scheduled vacation. Before leaving, she reiterated to Ladner that upon her return, it was her desire to remain a full-time employee until the end of 2004 and then work part time beginning in January 2005.
While Chiles was on vacation, a full-time office manager was hired. Chiles was content with being relieved of office management duties, and Chiles even told the new office manager she would assist her in the transition upon Chiles’ return. However, upon her return to work on October 29, 2004, Ladner handed Chiles a letter, stating he formally accepted Chiles’ “resignation,” and she should clear out her desk and leave that day. In the letter, Ladner agreed to pay Chiles until December 31, 2004, which was the date he contended was Chiles’ earlier-stated resignation date.
On January 2, 2005, Chiles filed for unemployment benefits because of her October 29, 2004 discharge. On January 19, 2005, a claims examiner issued a determination, stating Chiles quit without good cause, and Chiles therefore was denied unemployment benefits. Chiles appealed. After an evidentiary hearing at which both Chiles and Ladner, among others testified, the unemployment compensation appeals referee issued an order reversing the claims examiner’s determination, holding that Chiles was discharged for reasons other than misconduct connected with work and therefore eligible for benefits. See § 443.101, Fla. Stat. (2005). In due course, the UAC reversed the referee’s decision, and Chiles now seeks redress here.
Section 120.57(1)(Z), Florida Statutes (2004) states, in pertinent part:
When rejecting or modifying [a] conclusion of law or interpretation of administrative rule, the agency must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified.... The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence....
*810 “It is clear from [section 120.57(1)(£) ] that [a] hearing officer’s findings of fact may not be overturned by the Board unless the findings are not supported by competent, substantial evidence.” Alles v. Department of Prof'l Reg. Const. Indus. Licensing Bd., 423 So.2d 624, 626 (Fla. 5th DCA 1982); see also Kan v. P.G. Cook Assocs., 566 So.2d 932, 933 (Fla. 3d DCA 1990)(“The decision of an appeals referee must be affirmed if it is supported by competent substantial evidence.”).
Here, the UAC did not satisfy the particularity requirement of section 120.579(1)(£ I-[1] Moreover, the record is replete with testimony from which the unemployment compensation appeals referee could readily conclude, especially in light of the history of their sixteen year professional relationship, that Chiles did not resign her position at BSRC, but rather simply expressed her desire to change from full-time employment to part-time employment with BSRC. For example, when asked if she told Ladner she wanted to quit to spend time with her family, Chiles responded:
No, I told him that I do not want to continue working on a full-time basis in the same capacity. That I would stay until the end of the project, till the end of the year. That I wanted to actually work something in a part-time basis, but that I did not want to continue ... in the position in the way we were going at the time.
Similarly, Chiles testified, “I just basically let [Ladner] know that I do not want to continue in the same fashion, that I will be willing to work in a part-time basis.”
Additionally, Chiles testified she told Ladner she would stay at BSRC on a full-time basis until the end of 2004. “And then I’ll continue on the project on a part-time basis until I finished.” [sic] Again, Chiles told the referee, “I would work on a part-time basis starting [ ] in the new year, you know, project by project basis.” When Ladner cross-examined Chiles as to whether she was going to leave the company, Chiles answered, “I never, ever indicated that I would not continue to work.” (emphasis added).
While in its May 19, 2005 order, the UAC acknowledged its review “is limited to those matters that were presented to the referee and are contained in the official record,” and reiterated the referee’s findings, it countermanded these fully supported findings of the hearing referee. Contrary to the supported findings of the referee, the UAC made its own findings, stating Chiles “announced in August 2004 that she would be resigning at the end of the year to devote more time to her family.... ” (Emphasis added). The UAC, after its own review of the record, found that “[Chiles] further advised she would be available after her resignation to work part[]time as a consultant.” (Emphasis added). The UAC concluded, “The fact that the claimant had expressed a desire to work part[]time for the employer after resignation of the full-time job is immaterial.” (Emphasis added). Notably, the referee’s decision nowhere mentions the word “resignation.” Rather, the referee found, “the claimant did not quit [sic] she was requesting to work on a part[-]time basis as of January 2005.”[2] Importantly, *811 too, the referee acknowledged Chiles’ testimony to be more credible than Ladner’s and, therefore, “material conflicts in evidence are resolved in favor of the claimant.” See Miller v. Florida Unemploy. Appeals Comm’n, 768 So.2d 1218 (Fla. 4th DCA 2000)(stating that referee is responsible for weighing and resolving conflicting evidence and judging credibility of witnesses).
Although Chiles’ expressed concern both in her brief and during oral argument that she was not a skilled rhetorician, her testimony together with the other evidence adduced at the evidentiary hearing before the referee in this case was more than sufficient to meet the competent substantial evidence standard required to support the referee’s finding that Chiles simply “wanted to return to part[-]time work” but was not resigning. Accordingly, we reverse the order of the UAC and remand this case for the reinstatement of the decision of the referee.
Reversed and remanded with directions.

. In this regard, the order of the UAC states only that "Upon review of the record and the arguments on appeal, the Commission concludes that the referee's decision is not supported by the record and is therefore, reversed.” We find this conclusory statement insufficient.

. Even Ladner stated, "I do not characterize what I did as a termination, as much as I simply said, you're leaving at the end of the year, you told me you're going at the end of the year to have a family and so, I'm paying you through the end of the year.”